DONALD A. FANTINI & others *vs.* SCHOOL COMMITTEE OF
CAMBRIDGE & another.

Middlesex.    June 9, 1972. — July 13, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, &
HENNESSEY, JJ.

*School and School Committee.    Municipal Corporations,* Referendum.
    *Words,* "Measure."

A vote of a city school committee that the then superintendent of
    schools not be reappointed for the succeeding year and be so
    notified but be requested to continue for the balance of the current
    year was not a "measure" subject to a citywide voter referendum
    under G. L. c. 43, § 42. [322–324]

BILL IN EQUITY filed in the Superior Court on March 20, 1972.

BILL IN EQUITY by an intervener filed in the Superior Court on March 23, 1972.

The suits were heard by *Mitchell*, J.

The case was submitted on briefs.

*William F. Looney, Jr., & A. David Mazzone* for the plaintiffs.

*Sumner H. Babcock, John J. Curtin, Jr., & James F. McHugh* for Frank J. Frisoli, intervener.

*Philip M. Cronin,* City Solicitor, *& Michael J. Lack* for the defendants.

BRAUCHER, J.   This is a bill in equity for declaratory and other relief.   The plaintiffs are residents and registered voters of the city of Cambridge; the defendants are the school committee and the city council.   Frank J. Frisoli, superintendent of the schools of the city, intervened and filed a bill for declaratory relief.   The case was tried on a statement of agreed facts, and the judge made findings of fact, declarations of law and an order for decree. From a final decree dismissing the bills with prejudice, the plaintiffs and the intervener appeal.   We summarize the judge's findings, which he adopted as a report of material facts.

The city has adopted a "Plan E" charter pursuant to G. L. c. 43, §§ 93–116.   The superintendent was appointed acting superintendent on September 1, 1970, was elected superintendent on March 2, 1971, and held the position thereafter.   On January 18, 1972, the school committee by a vote of four to three adopted a motion that the superintendent not be reappointed for the school year 1972–1973 and that the vice-chairman give him written notice of this determination and request him to continue his present duties until the end of the current school year, pending reassignment for the school year 1972–1973.   On January 26, 1972, the school committee by the same vote defeated a motion for reconsideration of the vote of January 18.   On February 4, 1972, the plaintiffs filed with the city clerk a petition signed by more than twelve per cent of the registered voters of the city, protesting against the taking effect of the vote of January 18.   The board of election commissioners of the city duly certified the signatures, and the city clerk duly transmitted the petition and certificate to the school committee.   The superintendent of schools on February 10, 1972, received a letter from the vice-chairman of the school committee

informing him of the January 18 vote. On February 22, 1972, the school committee by a vote of four to three defeated a motion to reconsider the vote of January 18, and transmitted the petition and certificate to the city council. On February 28, 1972, the city council defeated by a vote of five to four a motion to submit the vote of January 18 to a vote of the registered voters of the city. On March 6, 1972, the city council defeated by a vote of five to three a motion to reconsider the prior vote.

The bills were filed in the Superior Court on March 20 and March 23, 1972, and the final decree was entered on April 26, 1972. The judge ruled, "The primary issue to be decided is whether the School Committee's vote of January 18th, 1972, is a proper subject for referendum under Massachusetts General Laws, Chapter 43, Section 42." He decided that "the action of the School Committee in dismissing the Superintendent" was "an executive act or decision" rather than a legislative act, and therefore was not a "measure" subject to referendum under G. L. c. 43, § 42. The plaintiffs and the intervener applied to the county court for an injunction pending appeal. In lieu of an injunction, the parties filed a stipulation, approved by the single justice, that no final appointment of a new superintendent would be made before a final decision of the full court without the approval of the single justice. A second stipulation provided for an abbreviated schedule for preparation of the record and filing of briefs, to be completed by June 5, 1972.

We rule on the single issue whether the school committee's vote of January 18 is a proper subject for referendum under G. L. c. 43, § 42. That statute applies "after the final passage of any measure, except a revenue loan order, by the city council or by the school committee." By G. L. (Ter. Ed.) c. 43, § 37, "measure" means "a resolution, order or vote passed by a school committee." We have ruled on the propriety of referenda in a number of cases,[1] three of which involved protests against actions

---

[1] *Dooling* v. *City Council of Fitchburg*, 242 Mass. 599. *Carriere* v. *Registrars of Voters of Fitchburg*, 257 Mass. 287. *Brown* v. *City*

of school committees. *Brown* v. *City Council of Cambridge,* 289 Mass. 333. *Gorman* v. *Peabody,* 312 Mass. 560. *Troland* v. *Malden,* 332 Mass. 351. In several cases we have mentioned a possible distinction between legislative acts and executive acts, but have avoided adoption of the distinction as a limitation on the language of §§ 37 and 42. See *Dooling* v. *City Council of Fitchburg,* 242 Mass. 599, 601–602; *Gilet* v. *City Clerk of Lowell,* 306 Mass. 170, 175–176; *Gorman* v. *Peabody,* 312 Mass. 560, 568; *Quinlan* v. *Cambridge,* 320 Mass. 124, 126; *Troland* v. *Malden,* 332 Mass. 351, 355; *Murphy* v. *Cambridge,* 342 Mass. 339, 340; *Fisher* v. *Holyoke,* 342 Mass. 669, 674; McQuillin, Municipal Corporations (3d ed. rev. 1969) § 16.55. We follow the same course here, although we seriously doubt the applicability of initiative or referendum procedures to acts of a school committee with respect to the appointment or removal of particular individuals. See G. L. c. 71, §§ 41–44.

The vote of January 18 was undoubtedly a "vote," and the plaintiffs and the intervener argue that under G. L. c. 43, § 37, any "vote" is a "measure" within G. L. c. 43, § 42. They rely on the legislative history, quoting the Report of the Joint Special Committee on City Charters, 1915 Senate Doc. No. 254, p. 22: "Those who urge the importance of giving the voters as great a voice in the management of the government as possible agree upon the initiative and referendum as the proper method." We think the argument proves too much. A negative vote is in a sense a vote, but it is hard to think of it as the "final passage of any measure"; moreover, an attempt to enact a measure over the opposition of a legislative body

*Council of Cambridge,* 289 Mass. 333. *Gilet* v. *City Clerk of Lowell,* 306 Mass. 170. *Gorman* v. *Peabody,* 312 Mass. 560. *Carpenter* v. *Registrars of Voters of Marlborough,* 327 Mass. 183. *Casey* v. *Everett,* 330 Mass. 220. *Troland* v. *Malden,* 332 Mass. 351. *Morra* v. *City Clerk of New Bedford,* 340 Mass. 240. *Murphy* v. *Cambridge,* 342 Mass. 339. *Sharpe* v. *Registrars of Voters of Northampton,* 342 Mass. 620. *Fisher* v. *Holyoke,* 342 Mass. 669. *O'Shea* v. *Holyoke,* 345 Mass. 175. . *Lafleur* v. *Chicopee,* 352 Mass. 746. *Jackson* v. *Registrars of Voters of Marlborough,* 353 Mass. 747. *Scalley* v. *Registrars of Voters of Woburn,* 358 Mass. 815. *Benson* v. *Lynn,* 359 Mass. 411.

sounds more like "initiative" than "referendum." Similarly, we cannot believe that a vote to amend a measure prior to a vote on passage, a vote to postpone consideration for a week or a month, a vote to lay on the table, a vote to put the previous question, or a vote to adjourn is "final passage of any measure."

The present case is controlled by these considerations. The vote of January 18 was somewhat multifarious; it had three distinct parts. The vote not to reappoint the superintendent bound no one; the superintendent had served less than a year in that position, and there is no suggestion that the school committee had elected him to serve as superintendent "at its discretion" under G. L. c. 71, § 41. He could have been reappointed by a subsequent vote just as easily as if there had been no vote of January 18. The vote that he be notified was more substantial: under G. L. c. 71, § 41, as amended, he would "be deemed to be appointed for the following school year" unless contrary notice was given on or before April 15. But the vote was not at all "final"; it merely kept open the school committee's option to reappoint or not to reappoint. The third part of the vote, to request him to serve out the school year, was no more "final" than the first two. Taken as a whole the essence of the vote was negative; the superintendent's appointment was not to be terminated by action of the school committee but was to expire with the school year in the absence of action to reappoint him. Compare *Wasson* v. *Director of Civil Defense,* 339 Mass. 322, 327; *Rhine* v. *International Young Men's Christian Assn. College,* 339 Mass. 610, 614.

It follows that the vote of January 18 was not subject to referendum, and that the superintendent is not "deemed to be appointed for the following school year" by reason of failure to give contrary notice. It would have been proper so to declare rather than to dismiss the bill, but there is no error affecting substantial rights.

*Decree affirmed.*